CIACCIO, Judge.
Creole Sales, Inc. originally sued H & H Utilities Service Company, Inc. on an open account to recover $10,781.51 for certain cement asbestos pipe. H & H had sold the pipe to Wallace C. Drennan, Inc., a contractor. Drennan had claimed that some of the pipe was defective and not fit for the use intended and had backcharged H & H for $5,568.23. H & H, therefore, filed a third-party claim against Drennan to recover the amount of the backcharge, and reconvened against Creole for the loss of Drennan’s business, allegedly resulting from the sale of the defective pipe. In the event that the pipe was found to be defective, Creole filed a third-party claim against the pipe manufacturer, Cement Asbestos Products Company. The trial court rendered judgment in favor of Creole Sales and against CAPCO for the amount of the backcharge and against H & H for the remainder due Creole. The third-party and reconventional demands filed by H & H were dismissed. H & H has not appealed and the judgment against it is now final. Only CAPCO appeals. We affirm.
CAPCO manufactured the pipe in question and sold it to Creole Sales, a distributor in Baton Rouge. CAPCO was paid by Creole for the pipe. Creole sold the pipe to H & H, a distributor in New Orleans, who sold the pipe to Drennan for use on an Orleans Parish Sewerage and Water Board contract job. The job involved the laying of water pipelines along Gull and Thrasher Streets in New Orleans.
Drennan installed the pipeline and tested it for leaks as per Sewerage and Water Board specifications. The pipeline leaked, so Drennan attempted to locate and repair the leakage. As Drennan’s employees investigated for leaks they found an excessive number and realized that something was wrong.
All of the leaks were located at various joints in the pipeline. On the first leak located Drennan used a repair clamp, but when several more leaks were found the pipe distributors and ultimately CAPCO were contacted. CAPCO sent a representative to the jobsite who viewed the leaking pipeline and formed the opinion that the leaks were caused by improper installation. Drennan’s employees, on the other hand, concluded that the leaks occurred because the pipe was non-concentric or out-of-round.
Drennan informed H & H of their determination that the pipe was defective. H & H told Drennan to do what it had to do to *748 resolve' the problem. Drennan secured new pipe, took the leaking pipe out of the ground and installed new pipe. The pipeline was tested again and did not leak. Drennan then backcharged H & H for the costs of the corrective work.
After a trial on the merits the trial judge found that Drennan was justified in back-charging H & H because the pipe supplied to Drennan by H & H was defective and had to be replaced at H & H’s cost. The trial court ruled that the pipe manufacturer, CAPCO, should ultimately bear the replacement costs. The trial judge rendered judgment against CAPCO for the amount of the Drennan backcharge to H & H.
CAPCO argues on appeal that the trial court erred in finding (1) that the pipe was defective, (2) that pipeline leaks were caused by the defective condition of the pipe, and (3) that Drennan adequately proved the amount and/or reasonableness of the costs of repairing the leaks. These are factual findings by the trial court. The issue on appeal is whether the judgment of the trial court against CAPCO should be reversed because the findings of fact are clearly wrong or manifestly erroneous. See: Canter v. Koehring Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
CAPCO combines the first two specified errors in an argument premised on the conclusion that this is a products liability case. CAPCO argues that in order to be held liable under a products liability theory, there must have been adequate proof at trial (1) that the pipe was. defective and (2) that the leaks were caused by the defective condition.
The first two findings of fact are best handled together. No one disputes that the pipe was laid in the best possible soil conditions, namely, stable sand. The four Dren-nan supervisors who were on this job each testified that they had many years of experience in this type of work. One of the supervisors testified that he observed every step of the pipeline installation, watched to make sure every joint of pipe was properly installed, and if any problems were encountered he would get into the trench himself and manually participate in the installation. Those witnesses who remembered where the pipeline leaks had occurred testified that the leaks were along the straight sections of the pipeline. A Drennan supervisor testified that if a deflection in the pipe needed to be taken, his normal practice, which was followed on this job, was not to exceed four inches from the straight line. The manufacturer’s allowable deflection is 13 inches. A cumulative assessment indicates this pipeline was installed under the best possible conditions, in basically a straight line, while under the supervision of men with a wealth of experience. However, when the pipeline was tested, it leaked.
At trial the representative from CAPCO who had viewed the leaking pipeline testified that he thought the cause of the leaks was that the pipe had been belled at an angle, that is, improperly installed. All of the Drennan supervisors on this job testified to the contrary; they narrated the general events of installation and indicated that they knew how to install the pipe and that the pipe had been properly installed.
Upon concluding that something was wrong with the pipe, Drennan’s employees measured the diameters of the ends of the leaking pipe joints in an attempt to detect the cause of the leaks. These field measurements, although crude, indicated that some of the pipe was not perfectly round. The manufacturer’s specifications called for an average pipe diameter of 9.11 inches ± .03 inches. The field measurements demonstrated that some of the pipe fell outside of the ± .03 inch tolerance.
At Drennan’s request, a pipe expert measured some of the pipe. His measurements supported the conclusion drawn from the field measurements. These measurements were taken at Gulf South Testing Laboratories on three pieces of pipe allegedly randomly selected from among the CAP-CO pipe Drennan had on this job. The expert measured the pipe ends to determine six different diameters. Comparing these measurements revealed that different loca *749 tions around the pipe ends had different diameters.
Alone, fluctuations in diameter may not be indicative of a defective condition so as to make the pipe unfit for the use intended. When the entire record is considered the theory of improper installation cannot be supported. However, the record contains ample testimony to support the conclusion reached by the trial court that the pipe was defective and that it was the defective condition of the pipe which caused the leaks. These findings of fact are not clearly wrong and will not be disturbed.
As to the remaining finding regarding the adequacy of proof and reasonableness of the costs incurred for corrective measures by Drennan, the trial judge committed no error. Testimony at trial established that when the leaks were encountered H & H told Drennan to keep track of the costs of correction and these costs would be absorbed by H & H. Pursuant to this instruction Drennan submitted an invoice which represented the correction costs to H & H. This backcharge invoice outlined the amount of time and the unit time cost for each supervisor and each laborer who participated in the corrections. The same method was used in calculating the costs for the tools and materials. H & H accepted the backcharge from Drennan.
The invoice was introduced at trial. The Drennan representative responsible for writing up the invoice testified as to how it had been prepared. Each of the supervisors also testified. They had been responsible for the laborers, tools and materials. The president of H & H testified that he felt the charges had been reasonable and could think of no reason to question Drennan’s figures. All of these witnesses were available to CAPCO for cross-examination. The proof was adequate and the evidence indicated the costs were reasonable. The trial judge’s finding was not clearly wrong.
Accordingly the judgment of the trial court is affirmed. All costs are assessed to appellants.
AFFIRMED.